**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| LOTT JOHNSON | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| V. | * | |
| | * | NO: 4:15CV00171  SWW |
| TOM VILSACK, Secretary, Department | * | |
| of Agriculture, ET AL., | * | |
| | * | |
| Defendants | * | |
| | * | |

**ORDER**

Plaintiff Lott Johnson ("Johnson") brings this action against Thomas J. Vilsack,

Secretary,  U.S. Department of Agriculture ("USDA") and five USDA Farm Service Agency

("FSA") employees, identified as Mark Petty ("Petty"); Linda Newkirk ("Newkirk"), James G.

Culpepper, III ("Culpepper"); Hendra Woodfork ("Woodfork"); and Chana Thompson

("Thompson").   Before the Court are Defendants' motions to dismiss [ECF Nos. 17, 18, 22, 23],

Johnson's responses in opposition [ECF Nos. 27, 32], and the USDA's reply [ECF No. 35].

After careful consideration, and for reasons that follow, the motions are granted and this action is

dismissed with prejudice.

**I.**

When ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court

must take as true the alleged facts and determine whether they are sufficient to raise more than a

speculative right to relief.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007).  The

Court does not, however, accept as true any allegation that is a legal conclusion. *Ashcroft v.*

*Iqbal,* 556 U .S. 662, 678 (2009). The complaint must set forth "enough facts to state a claim to

relief that is plausible on its face." *Twombly,* 550 U.S. at 570.

## II.

Johnson, a black male who farms land in Lonoke County, claims that Secretary Vilsack

and the FSA employees conspired, discriminated, and retaliated against him in connection with

the administration of his FSA loans and related applications. This action is a refiling of a

previous lawsuit commenced in this Court, *see Johnson v. Vilsack*, No. 4:12CV00371 JLH (E.D.

Ark.), hereinafter "*Johnson I.*" In *Johnson I*, United States District Judge J. Leon Holmes

granted summary judgment in the defendants' favor but dismissed the action without prejudice.

Johnson's specific allegations in this case, which are nearly identical to those asserted in

*Johnson I* are as follows:

- In February 2010, Johnson applied for an FSA operating loan in the amount of $34,000.

- In March 2010, FSA employees Petty and Thompson withdrew Johnson's loan application and required him to submit a second application. Johnson submitted a second loan application on or about March 30, 2010.

- Although Johnson had substantially complied with FSA requests for documentation necessary to complete the loan application process, on May 11, 2010, FSA employees, who are not identified by Johnson, withdrew his second loan application.

- On May 18, 2010, Johnson filed a discrimination complaint with the Office of the Assistant Secretary for Civil Rights, alleging discrimination based on withdrawal of his loan application.

- During the period between February 2010 and June 2010, Johnson requested debt servicing for his outstanding FSA loans.

- On April 2010, FSA employees, including Defendants Newkirk and Culpepper, initiated administrative offsets and notified Johnson that they intended to intercept any federal payments due him and apply those sums to his outstanding debt.

- On August 2, 2010, the FSA denied Johnson's application for debt servicing and notified him of plans to accelerate his debts.

- Beginning October 20, 2010, the FSA collected money through the aforementioned offset procedure.

- Throughout 2010 and 2011, FSA employees, including Defendant Woodfork, denied Johnson  loan servicing options and loan assistance in obtaining operating and equipment loans.

Johnson's allegations in this case and *Johnson I* differ in only a few respects.  First, in *Johnson I*, he alleged that the FSA employees' final wrongful act occurred on August 2, 2010, but in this case, he alleges that the final wrong occurred on July 1, 2011.  Second, in this case, Johnson alleges that Defendants conspired though correspondence and false statements to improperly accelerate his debt and withdraw his loan application on July 1, 2011, and he adds that the defendants acted in concert and "developed a system wide policy to deviate from FSA's Handbook" when they withdrew his loan application on July 1, 2011.

Based on the foregoing allegations, Johnson claims, as he did in *Johnson I*, that Defendants (1) discriminated against him based on race, in violation of Title VI of the Civil Rights Act of 1964[1] and the Equal Credit Opportunity Act ("ECOA"),[2] by withdrawing and denying his loan applications and servicing requests; (2) deprived him of his Fifth Amendment

---

[1]Title VI, 42 U.S.C. § 2000d et seq., was enacted as part of the Civil Rights Act of 1964, and it prohibits discrimination on the basis of race, color, and national origin in programs and activities receiving federal financial assistance.  Johnson's reference to Title VI appears only in the jurisdictional statement set forth in his complaint.

[2]The Equal Credit Opportunity Act makes it "unlawful for a creditor to discriminate against any applicant with respect to any aspect of a credit transaction ... on the basis of race . . . or . . .  because the applicant has in good faith exercised any right under this chapter."  15 U.S.C. § 1691(a)(1) & (3).

rights to due process and equal protection of the law,[3] through the implementation of debt offsets

and by other means; and (3) conspired to deprive him of federal constitutional and statutory

rights, in violation of 42 U.S.C. § 1985(3).  Johnson also charges that Defendants retaliated

against him for his membership in the plaintiff class in *Pigford v. Glickman*, 185 F.R.D. 82

(D.D.C. 1999).[4]  By way of relief, Johnson seeks compensatory and punitive damages and

declaratory and injunctive relief, and he sues each defendant in his or her individual and official

capacity.

## III.

A.  Claims Alleging Constitutional Violations

Johnson's allegations indicate that Defendants acted under the color of federal law when

they transgressed his due process and equal protection rights and retaliated against him for his

participation in *Pigford v. Glickman*.[5]  Accordingly, the applicable cause of action comes under

---

[3]The Equal Protection Clause of the Fourteenth Amendment is made applicable to the federal government through the Fifth Amendment's Due Process Clause. *See Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693 (1954).  The Court notes that Johnson's complaint contains a jurisdictional statement, which provides in part that the Court has jurisdiction pursuant to the Thirteenth Amendment.  Compl., ¶ 4.  The Thirteenth Amendment abolished slavery and gave enforcement power to Congress, but it does not provide a private cause of action, nor does it bestow federal subject matter jurisdiction.

[4]*Pigford* was a class action on behalf of thousands of black farmers who claimed that they had been discriminated against because of their race in connection with the USDA's administration of farm loan programs.   The *Pigford* litigation culminated with the entry of a consent decree that set forth a  process for resolving individual claims against the USDA.  *See Pigford v. Glickman* , 185 F.R.D. 82 (D.D.C. 1999).

[5]Filing a civil rights lawsuit is an activity protected by the First Amendment, and First Amendment retaliation claims are analyzed under the same framework as those brought under Title VII.  *See Tyler v. Univ. of Arkansas Bd. of Trustees*, 628 F.3d 980, 986 (8th Cir. 2011).  Here, Johnson alleges no facts showing a causal nexus between the complained-of conduct and his participation in *Pigford v. Glickman*, thus he fails to state a cognizable retaliation claim.

*Bivens v. Six Unknown Named Federal Narcotics Agents,* 403 U.S. 388 (1971).   In *Bivens*, the Supreme Court recognized an implied cause of action for monetary damages against federal government officials sued in their individual capacities for constitutional violations.  *See Carpenter's Produce v. Arnold*, 189 F.3d 686, 687 (8th Cir.1999).  The FSA employees seek dismissal of Johnson's *Bivens* claims, asserting that  (1) the claims fall outside the applicable statute of limitations; (2) the claims are precluded by the existence of a comprehensive remedial scheme; and (3) the official-capacity claims are barred by the doctrine of sovereign immunity. By separate motion, Secretary Vilsack presents the additional argument that Johnson fails to allege facts showing that he was personally involved in the complained-of conduct.

*Statute of Limitations*.  *Bivens* actions are governed by the same statute of limitations as § 1983 actions, *see Sanchez v. United States*, 49 F.3d 1329, 1330 (8th Cir. 1995), thus the forum state's statute of limitations for personal injury actions governs.  *See Morton v. City of Little Rock*, 934 F.2d 180, 182 (8th Cir. 1991).   In Arkansas, the statute of limitations for personal injury actions is three years.  *See Morton v. City of Little Rock*, 934 F.2d 180, 182 (8th Cir. 1991). The FSA employees note that according to the complaint allegations, the most recent wrongful act committed by them occurred on July 1, 2011, and they contend that Johnson's complaint, filed  on March 23, 2015, is time-barred.

Johnson claims the benefit of the Arkansas saving statute, which provides that if an action is timely filed and the plaintiff suffers a nonsuit, he or she may commence a new action within one year after the nonsuit.  *See* Ark. Code Ann. § 16-56-126(a)(1); *see also Miller v. Norris*, 247 F.3d 736, 739 (8th Cir. 2001).  Application of the savings statute is proper only if *Johnson I* was timely filed, and it is far from clear that such is the case.

Johnson did not initially name the FSA employees as defendants in Johnson I.  Instead,

he joined his claims against them by way of an amended complaint filed on September 18, 2013,

and the FSA employees moved to dismiss the claims as time-barred.  In a recommended

disposition adopted by Judge Holmes, United States Magistrate Judge Jerome T. Kearney found

that Johnson's claims against the FSA employees did not relate back to the filing of is original

complaint.  However, Judge Kearney did not determine when the statute of limitations period

had commenced, and he recommended dismissal of Johnson's *Bivens* claims on alternative

grounds.  Like Judge Kearney, this Court finds that even if a portion of Johnson's *Bivens* claims

were timely filed, those claims must be dismissed on other grounds.

*Comprehensive Remedial Scheme*.  "Bivens actions are implied causes of action for

damages against government officials for constitutional violations where Congress has not

specifically provided for such a remedy." *Carpenter's Produce v. Arnold*, 189 F.3d 686, 687 (8th

Cir. 1999).   However, where a suitable avenue of other recourse is available to a plaintiff, such

as a statutory mechanism giving meaningful relief against the United States, a remedy under

*Bivens* is unavailable.  *See Schweiker v. Chilicky*, 487 U.S. 412, 412-13, 108 S. Ct. 2460, 2462

(1988).

The Court agrees that Johnson's *Bivens* claims are precluded by a comprehensive

remedial scheme, including a right to request administrative review of collection by

administrative offset, *see* 7 C.F.R. § 3.63, and debt settlement decisions, *see* 7 C.F.R. § 792.12;

the right to appeal to the National Appeals Division ("NAD"), *see* 7 C.F.R. §11.1 through 11.15,

and the right to judicial review of a final NAD determination.  *See* 7 C.F.R. § 11.13.

Additionally, the Assistant Secretary for Civil Rights ("ASCR") has the authority to make final

determinations regarding discrimination claims related to the administration of the FSA's farm

loan program and to award  compensatory damages pursuant to the ECOA.  *See* 7 C.F.R.

2.25(a)(18).

As a participant in the FSA's farm loan program, Johnson filed a complaint with the

ASCR, alleging that FSA employees discriminated against him on the basis of race and retaliated

against him based on the same facts alleged in this action.  On February 29, 2012, the ASCR

entered a final agency decision in Johnson's favor, which awarded money damages, debt relief,

and required the FSA to take various remedial actions.[6]  Johnson does not claim that the FSA

failed to comply with the final agency decision.  The Court finds that ASCR remedial program

provides adequate remedial mechanisms for constitutional violations and that Johnson is

precluded from seeking additional relief under *Bivens*.

*Official Capacity Claims*.  Even assuming that Johnson's claims were not precluded by

the existence of a comprehensive remedial scheme, his *Bivens* claims for money damages against

Defendants in their official capacities could not proceed.  Such claims are equivalent to a claim

against the United States and are barred under the doctrine of sovereign immunity. *See Buford v.*

*Runyon*, 160 F.3d 1199, 1203 (8th Cir.1998)(stating that a claim against a federal government

official in his official capacity is suit against United States, and a *Bivens* action cannot be

---

[6]When ruling on a Rule 12(b)(6) motion, the court must generally ignore matters outside the pleadings, *see Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999), and if a court considers evidence outside the pleadings, it must normally convert the motion into a summary judgment motion. *See Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 698 (8th Cir. 2003). However, the court may consider materials that are necessarily embraced by the complaint and materials that are part of the public record. *Id.*  Here, the final agency decision issued by the Office of the Assistant Secretary for Civil Rights, submitted in support of the USDA's motion to dismiss [ECF No. 23-1], does not contradict the complaint allegations, and the Court may consider the public document in deciding the Government's motion to dismiss.

prosecuted against United States because of sovereign immunity).

*Personal Involvement.*  Because there is no *respondeat superior* liability in *Bivens*

actions, defendants may only be held liable for their personal actions.  *Estate of Rosenberg v.*

*Crandell,* 56 F.3d 35, 37 (8th Cir.1995).  Here, the complaint is void of a single allegation

regarding Secretary Vilsack's involvement in the alleged constitutional violations.  *See Ashcroft*

*v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937 (2009)("Because vicarious liability is inapplicable to

Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through

the official's own individual actions, has violated the Constitution.").   Accordingly, even if

Johnson's *Bivens* claims were not precluded by the existence of a comprehensive remedial

scheme, he fails to state a cognizable individual-capacity claim against the Secretary.

## B.  Equal Credit Opportunity Act (ECOA) Claims

The USDA argues that Johnson's discrimination and retaliation claims pursuant to the

ECOA are barred by the doctrine of *res judicata* because they were resolved by a final order

issued by the ASCR.  In *Johnson I,* the USDA made the same argument, and Judge Holmes

found that the requirements for *res judicata* [7] were met and that the very same claims that

Johnson pursues in this case are barred.  *See also Johnson v, Vilsack*, No 4:12CV00793 JMM,

2015 WL 1196764, *4 (E.D. Ark. March 15, 2015)(finding ECOA claims *res judicata* based on

---

[7]"*Res judicata* bars a party from asserting a claim in court if three requirements are met:
(1) the prior judgment was rendered by a court of competent jurisdiction; (2) the decision was a
final judgment on the merits; and (3) the same cause of action and the same parties or their
privies were involved in both cases." *United States v. Brekke*,  97 F.3d 1043, 1047 (8th Cir. 1996)
(citations omitted).   Furthermore, "[w]hen an administrative agency is acting in a judicial
capacity and resolves disputed issues of fact properly before it which the parties have had an
adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce
repose." *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 421–422, 86 S.Ct.
1545, 1559–1560 (1966).

final order issued by ASCR).

In addition to reasserting the argument that Johnson's claims are *res judicata*, the USDA asserts that Judge Holmes's decision on that issue has a preclusive or collateral estoppel effect in this case. The preclusive effect of a federal-court judgment is determined by federal common law. *See Taylor v. Sturgell*, 553 U.S. 880, 891, 128 S. Ct. 2161 (2008)(citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507-508, 121 S.Ct. 1021 (2001)). Issue preclusion, which differs from claim preclusion, "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892, 128 S.Ct. at 2171(quoting *Montana v. United States*, 440 U.S. 147, 153-154, 99 S.Ct. 970 (1979)). "By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,' these two doctrines protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Id*.

Issue preclusion has five elements: (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment. *See Ginters v. Frazier*, 614 F.3d 822, 826 (8th Cir. 2010)(citing *Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007)). Here, each of the foregoing requirements is met. Johnson argues that because Judge Holmes dismissed

Johnson without prejudice, the doctrine of issue preclusion does not apply. The Court finds that Judge Holmes's dismissal without prejudice was "sufficiently firm to be accorded conclusive effect[,] *Germain Real Estate Co., LLC v. HCH Toyota*, *LLC*, 778 F.3d 692, 696 (8th Cir. 2015), and the Court finds that the judgment entered in *Johnson I* was final for purposes of issue preclusion.

Even assuming that the application of issue preclusion is not applicable, the Court would find, for the same reasons stated in Judge Kearney's recommended disposition issued in *Johnson I*, that Johnson's ECOA claims are barred by the doctrine of *res judicata*.

## C. Conspiracy Claim

Defendants assert, and the Court agrees, that Johnson fails to allege facts sufficient to state a conspiracy claim under 42 U.S.C. § 1985(3). To state a claim under the equal protection provisions of the first part of § 1985(3), a plaintiff must allege that the defendants had an agreement to violate his civil rights and that the conspiracy was fueled by some class-based, invidiously discriminatory animus. *See Andrews v. Fowler*, 98 F.3d 1069, 1079 (8th 1996)(citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268, 113 S.Ct. 753, 758 (1993)). Here, Johnson makes no factual allegations indicating an agreement between the defendants to violate his constitutional rights, nor does he allege facts showing that the defendants' actions were motivated by class-based discriminatory animus. Additionally, because Johnson fails to state a claim for the violation of his civil rights, he cannot state a claim for civil conspiracy. *See Federer v. Gephardt* 363 F.3d 754, 757 -758 (8th Cir. 2004)("Section 1985 is a statute which provides a remedy, but it grants no substantive stand-alone rights. The source of the right or laws violated must be found elsewhere.").

**D. Title VI**

Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. However, Title VI is applicable only where federal funding is given to a local, state, or other non-federal entity–it does not cover programs administered by the federal government. *See Soberal-Perez v. Heckler*, 717 F.2d 36, 38 (2d Cir. 1983), *certiorari denied,* 104 S.Ct. 1713, 466 U.S. 929 (1984). Accordingly, to the extent that Johnson attempts to bring a claim under Title VI,[8] he fails to state a claim upon which relief can be granted.

### IV.

For the reasons stated, Defendants' motions to dismiss [ECF Nos. 17, 22] are GRANTED. Pursuant to the judgment entered together with this order, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 1ST DAY OF DECEMBER, 2015.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE

---

[8]Defendants state that Johnson does not seek relief under Title VI, but the statute is cited in the complaint.